[No. 17104.  Department Two.  May 17, 1923.]

S. A. ROSSIER, *as Administrator of the Estate of Marvin A. Mason, Deceased, Appellant,* v. JOHN BARTON PAYNE, *as Director General of Railroads, Respondent.*[1]

RAILROADS (69)—ACCIDENTS AT CROSSINGS—NEGLIGENCE OF DRIVER OF AUTO—EVIDENCE—ADMISSIBILITY.  Upon an issue as to the contributory negligence of plaintiff's decedent at a railroad crossing, it is not competent to show that it was a custom of decedent at the place in question to stop, look and listen for approaching trains.

SAME (72)—ACCIDENTS AT·CROSSINGS—DUTY OF DRIVER OF AUTO—INSTRUCTIONS.  The duty of a person approaching a railroad crossing is properly stated in instructions that he must exercise care proportionate to the danger, that obstructions to the view requires a greater degree of care, and that he must stop, look and listen when an approaching train cannot be ascertained by ordinary observation.

SAME (62)—ACCIDENT AT CROSSING—NEGLIGENCE—LAST CLEAR CHANCE—SPECIAL FINDINGS—CONSTRUCTION.  The doctrine of last clear chance cannot apply and the question is one for the court, where the engineer on a passenger train, making fifty miles an hour, did not see decedent drive upon the tracks at a crossing until two seconds before the accident; and a special finding of the jury that the engineer should have discovered decedent's peril prior to the accident in time to avoid it is a finding as to negligence and not of liability on the doctrine of last clear chance.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered May 19, 1921, upon the verdict of a jury rendered in favor of the defendant, in an action in tort.  Affirmed.

*E. C. Ward, McMaster, Hall & Schaefer, Geo. A.,. Brodie,* and *McAulay & Meigs,* for appellant.

*George T. Reid, J. W. Quick, L. B. da Ponte,* and *Rigg & Venables,* for respondent.

[1]Reported in 215 Pac. 366.

Fullerton, J.—This is an action to recover damages for the death of Marvin A. Mason, killed in a railway crossing accident June 16, 1918, in Yakima county. A trial before a jury in the court below resulted in a verdict for the defendant, and a judgment was entered accordingly, from which the plaintiff has appealed.

The facts upon which the action was based follow: For many years prior to the time of the accident, there had existed a road running from the farm occupied by Mason in a southerly direction to a point about sixty feet from the main line tracks of the Northern Pacific Railway Company; thence in a westerly direction, practically parallel to the tracks, for a distance of some two hundred feet, and thence southerly across the tracks. The approach to the tracks, after making the last turn, was up a fourteen per cent grade. The railroad right of way was fenced, but at the point where the road entered the right of way there was a gate. At the time of the accident, Mason was driving an automobile along the road in the direction of a station of the railway company. The automobile was struck while on the crossing by a passenger train traveling westward from the station mentioned. Its speed was about fifty miles per hour, the usual speed of passenger trains at that place. Mason's father-in-law was riding in the automobile with him, and both were killed.

Two distinct acts of negligence were alleged; first, that the railroad company had permitted brush and trees to grow upon its right of way, thus shutting off the view of the track and approaching trains from those traveling along the road; and second, that no warning was given of the approaching train, either by bell or whistle.

In addition to returning a general verdict in favor of the defendant, the jury returned answers to special interrogatories as follows:

"7. Was defendant guilty of any negligence charged in plaintiff's complaint which proximately caused the accident?

"Answer: Yes.

"8. If you answer 'Yes' to interrogatory 7, then you will answer whether Mr. Mason was guilty of any negligence which proximately contributed to the accident?

"Answer: Yes.

"9. If you answer 'Yes' to both interrogatories 7 and 8, then you will answer whether Mr. Mason unconsciously placed himself in a position of peril immediately prior to the accident?

"Answer: He did.

"10. If you answer 'Yes' to interrogatory 9, then you will answer whether the defendant's locomotive engineer by the exercise of reasonable care should have discovered Mr. Mason's peril prior to the accident in time to have prevented the injury?

"Answer: Yes, he should."

The first contention of the appellant is that the court below erred in refusing to admit evidence offered by the appellant tending to show that it was the general custom and habit of Mason to stop and look for approaching trains when at the gate, and again to look just before crossing the track. This court has, however, repeatedly held that it is not competent for a party, in order to rebut evidence of negligence on a particular occasion, to show that he is generally careful, cautious and prudent; and has also held the corollary of the rule, namely, that it is not competent, in order to support a claim of negligence on the particular occasion, to show that the party is habitually careless and negligent. The rule precludes the evidence proffered in this instance. *Christensen v. Union Trunk Line*, 6 Wash. 75, 32 Pac. 1018; *Carter v. Seattle*, 19 Wash. 597, 53 Pac. 1102; *Atherton v. Tacoma R. & Power Co.*, 30 Wash. 395, 71 Pac. 39; *Kangley v. Rog-*

*ers,* 85 Wash. 250, 147 Pac. 898; *Chilberg v. Parsons,* 109 Wash. 90, 186 Pac. 272.

The appellant next complains of certain instructions given by the court to the jury. These, we think, we need not repeat here at length. It is objected to them that they ignore the doctrine that the duty of the deceased in approaching and crossing the railway track was only to exercise ordinary prudence and care commensurate with the circumstances, and in effect instruct the jury in such a manner as to make the deceased the insurer of his own safety. We cannot, however, so read the instructions. The opening sentence of the one to which the criticism is chiefly directed is: "One who approaches a railroad crossing must exercise ordinary care for his own safety, and the degree of care must be proportionate to the danger;" and we do not find elsewhere in the instruction any limitation upon the rule. While the court gave certain further instructions explanatory of the rule, and did say that, "when the view or hearing of the traveler is impeded or obstructed, he must use greater care and prudence in looking and listening for the approach of trains than when they are not" so obstructed; and further said that, if a traveler cannot ascertain by ordinary observation whether a train is approaching, "he must *stop,* look and listen," yet it distinctly left it for the jury to say whether the appellant's decedent in this instance exercised that degree of care commensurate with the circumstances and conditions surrounding him. Manifestly, we think, there was here no departure from the correct principles of law governing in such cases.

The final contention is that the tenth special finding made by the jury is contrary to the general verdict and entitles the appellant to a new trial, if it does not

justify a judgment in his favor.  If we have correctly gathered the purport of the argument, it is that evidence was sufficient to invoke the doctrine of last clear chance, and that this finding of the jury is in effect a finding that the respondent's locomotive engineer had the last clear chance to avoid the accident.  The principles governing the doctrine invoked are set forth in our cases of *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684; *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106, and the cases therein cited.  In the first of these cases we said:

"This court has held that whether this doctrine is applicable in a given case is a question of law to be determined by the court.  *Hartley v. Lasater,* 96 Wash. 407, 165 Pac. 106.  This doctrine can never arise where the party charged is required to act instantaneously. It presupposes contributory negligence, and where that negligence creates instantaneously a dangerous situation, without an appreciable lapse of time in which to avoid it, there is no room for its application.  Nowhere, to the knowledge of the writer, has the doctrine of last clear chance been more accurately and clearly stated than in the case last above cited, where this court said:

" 'Last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectually act upon the impulse to save another from injury, or the proof of circumstances which will put the one charged to implied notice of the situation. There was no duty upon appellants to slow down or to take such care as the doctrine of last clear chance demands, until they were put to the hazard of choice by some act of respondent.  When respondent changed his position, he relieved appellants, unless the facts would warrant the court and jury in saying that there was sufficient time between his act and the impact for appellants to realize his peril and to avoid it.  To invoke the doctrine of the last clear chance, we must grant the negligence of respondent and find that his negligence 'had terminated or culminated in a situa-

tion of peril from which the exercise of ordinary care on his part would not thereafter extricate him;' that appellants knew and appreciated his danger and could, in the exercise of reasonable care, have avoided injuring him. A mere statement of the rule reveals its inapplicability to a case where the contributory negligence began and culminated without the lapse of appreciable time. The doctrine is not applied where the negligence is concurrent.' "

Tested by these principles, there is no room for the application of the doctrine to the instant case. The engineer testified that he did not in fact see the automobile until it was almost upon the railway track, possibly two seconds before the collision, and that he immediately made every effort to stop, although such an effort at that time could not avoid the accident. Plainly, after the peril of the occupants of the automobile was discovered by the engineer, there was no opportunity on his part to avoid the accident. The finding of the jury, as we view it, is simply a finding that the respondent's engineer was guilty of negligence in failing to discover the peril of the party injured in time to avoid it, and is not a finding that he could have avoided it after its discovery, which is the rationale of the doctrine of last clear chance.

The judgment is affirmed.

MAIN, C. J., TOLMAN, MITCHELL, and PEMBERTON, JJ., concur.